No. 29,897.

ERNEST W. CAMPBELL, RALPH H. CAMPBELL, ALBERT T. CAMPBELL, LAPORTE CAMPBELL, LYMAN CAMPBELL and CHARLES CAMPBELL, *Appellants,* v. MILDRED WARNBERG and CHARLES WARNBERG, *Appellees.*

(299 Pac. 583.)

H. W. Goodwin and W. H. Schwinn, both of Wellington, for the appellants.

E. J. Taggart, John Bradley, both of Wellington, W. L. Cunningham, D. Arthur Walker, Fred G. Leach and William E. Cunningham, all of Arkansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to construe a will and to determine certain rights of its beneficiaries appearing here as litigants.

The late L. J. Campbell, of Sumner county, died testate seized of several hundred acres of land upon which he placed a testamentary valuation of $36,000. After making suitable provision for his wife he apportioned his real estate among his children in "shares" of the value of $500 each. Thus the $36,000 worth of land was to be regarded for purposes of division among his children as seventy-two shares worth $500 each.

A description of the lands and the testator's valuations may be thus abridged:

CAMPBELL LANDS IN TOWN 35 S, RANGE 3 WEST.

| | |
|---|---|
| (1) SW¼, sec. 11 | $16,000 |
| (2) S½ SE¼, sec. 11, less 20 acres and plus tract 30 | 6,000 |
| (3) N½ NE¼, sec. 14, and tract 12, less portion contracted away | 4,000 |
| (4) S½ SE¼, sec. 10 | 6,000 |
| (5) N½ NE¼, sec. 15 | 4,000 |
| Total | $36,000 |

The will then provides:

"I give, bequeath and devise as follows, that is to say:

| | |
|---|---|
| To my son, Ernest W. Campbell | 12 shares |
| To my son, Ralph H. Campbell | 12 shares |
| To my son, Albert T. Campbell | 8 shares |
| To my daughter, Mildred [Warnberg] | 8 shares |
| To my son, LaPorte Campbell | 8 shares |
| To my son, Lyman Campbell | 8 shares |
| To my daughter, Helen Campbell | 8 shares |
| To my son, Charles C. Campbell | 8 shares" |

The will next gave options to the sons Ernest and Ralph to purchase certain of the lands, indicated in the list as Nos. 1 and 2, at the testator's valuations, and gave the younger sons successively the same options in the event their older brothers did not elect to exercise those options. The same paragraph provided that the daughters should not receive their shares until they attained the age of twenty-five years. The paragraph concerning the options reads:

"And I do hereby give to my son, Ernest W. Campbell, the option to take said southwest quarter of section eleven at its value of sixteen thousand dollars and to pay to his brothers and sisters their respective shares therein and I do give to my son, Ralph H. Campbell, the option to take said south half of the southeast quarter of section eleven and said tract number thirty at its value of six thousand dollars and to pay to his brothers and sisters their respective shares therein—and in case my sons, Ernest W. Campbell or Ralph H. Campbell, do, not elect to exercise their respective options, then such options may be exercised by any other sons according to priority of age, and in case two or more of my sons in the exercise of such option desire the same tract of land such choice to be settled by lot; and it is my further wish, desire and will that when my daughters, Mildred Warrensburg [Warnberg] and Helen Campbell shall arrive at the age of twenty-five years, then my sons herein named shall pay to each of them the sum of four thousand dollars for their respective shares in said real property, it being my will that my said daughters shall not receive any portion of said shares of my real property until they arrive at the age of twenty-five years and then to receive said sum of four thousand each."

Another paragraph throwing some light on the testator's testamentary purposes provided:

"Out of the net income of the land I direct my executors to use the portion or share of each of my children who may be a minor, for his or her education."

The will was executed on December 13, 1921. The testator died on February 22, 1929, and his will was probated on February 27, 1929, without controversy.

Neither of the sons, Ernest or Ralph, elected to exercise the specific options conferred upon them by the will or signified any such purpose, nor in the successive order authorized by the testator did any of the younger sons do so, unless the commencement of this action on June 7, 1930, by all six of the sons against their sister Mildred, defendant in this action with her husband, should be so construed.

Plaintiffs' petition alleged that they were tenants in common of the real estate described in the testator's will and claimed title thereto; that their sister Mildred and her husband had no interest in the property, but in lieu thereof these plaintiffs—

"Were directed to pay to said Mildred Warnburg the sum of $4,000 when she should attain the age of twenty-five years."

Plaintiffs also alleged that at various dates they tendered to Mildred the sum of $4,000, which she refused to accept; that she claimed to be the owner of an undivided interest in the real estate devised by her father's will; and plaintiffs alleged their readiness to

pay to her the sum of $4,000. They prayed that their title be quieted against Mildred and her husband.

By way of answer Mildred and her husband admitted various formal matters, including the death of the testator, the probate of the will, and the accuracy of the copy attached to plaintiff's petition. She alleged that the only heirs of the testator were his widow and herself and her brothers and sister, whose ages were indicated by their births, to wit: Ernest W. Campbell, born May 20, 1893; Albert T. Campbell, born September 12, 1894; Ralph H. Campbell, born February 9, 1897; Mildred Warnberg, born February 15, 1899; LaPorte Campbell, born July 18, 1903; Lyman Campbell, born July 11, 1906; Helen E. Campbell, born February 15, 1908; Charles Campbell, born July 29, 1910.

Defendants' answer denied that plaintiffs were exclusively the owners and tenants in common of the lands described in the will; denied that plaintiffs were directed or obliged to pay Mildred $4,000 in lieu of any interest in the real estate; denied that plaintiffs at the dates mentioned in their petition or at any other time tendered her $4,000.

Defendants' answer contained many other allegations of no present concern except one, the substance of which was that the will did not specifically fix any time for the exercise of the options by her brothers Ernest and Ralph, nor at what periods the options conferred on them should pass to their younger brothers successively on the failure of Ernest and Ralph or either of them to exercise those options; that her brothers' successive rights to exercise the options were ambiguous and inconsistent, and the terms upon which they might be exercised were indefinite and the rights of Mildred and her younger sister were uncertain and equivocal, and furthermore—

"Defendant further alleges that at the time said will was executed the testator in said will valued all of his real estate described therein at the sum of $36,000, and such value at the time of the execution of said will was the fair and reasonable value of said property.

"That upon the death of said testator, and the probate of said will, the plaintiffs . . . did not seek to claim or exercise said option now claimed or any of them until long after the probate of said will and long after they had full knowledge and information of the terms and conditions of said will. That in the meantime, and on or about the —— day of March, 1929, the Gypsy Oil Company, and other oil companies, caused several oil wells to be drilled in the immediate vicinity and neighborhood of the land described in said petition, and such wells were drilled in as producing oil and gas wells on or about the month of March, April and May, 1929, the value of the land

described in said petition greatly increased, and that the plaintiffs, although well knowing all of the terms and conditions of said will and probate thereof, failed, neglected and refused to claim that they had any options or to exercise said options while the wells above described were being drilled and before they reached production or paying. sand, and speculated with what they now claim to be their right and option. That the value placed· on said lands by the testator in his will was a fair market value of said lands from an agricultural standpoint, for which purpose said land had always been held and used by testator prior to his death, and that by reason of the discovery of oil and gas in the immediate vicinity of said lands, as above set forth, said lands became and now are of a greatly increased value and said lands are now reasonably worth and of the market value of $150,000, and that by reason of the acts and conduct of the plaintiff as above set forth, they are guilty of laches in exercising, or attempting to exercise said claimed options and rights, and are estopped to now assert them."

Plaintiffs lodged a demurrer against this answer on the ground that it did not state any defense, and that the will of the testator was not ambiguous or uncertain and was in no need of judicial interpretation.

This demurrer was overruled, and plaintiffs appeal. Their counsel discuss several matters which are of little consequence because of what is admitted by the demurrer—that neither of the plaintiffs showed any interest in the options conferred upon them by their father's will, but deferred action thereon until they could determine with some confidence that the devised lands were within a proven area of gas and oil development and therefore worth vastly more than they were for agricultural purposes as estimated by the testator when he made his will in 1921 or when he died or when the will was probated in 1929.

The pertinent law on this point is well settled. A person who has an option to purchase land, where no time limit·is specified, must exercise it within a reasonable time. (*Knipe v. Troika*, 92 Kan. 549, 141 Pac. 559; 39 Cyc. 1241-1243.) What is a reasonable time depends on the circumstances of the particular case. (*McMurry v. Fletcher*, 28 Kan. 337; 36 Cyc. 709, 6 R. C. L. 899.)

The circumstances will invariably require prompt action on the part of an option holder where speculative fluctuations of property values are rife as where those values are likely to be suddenly and radically affected by impending discoveries of gas, oil or other minerals, or by other unusual circumstances not contemplated when the option was granted. The supreme court of the United States has spoken with clarity on this subject. In *Taylor v. Longworth et al.*,

39 U. S. 172, 10 L. Ed. 405, where the suit was to enforce a contract for the sale of some town property in Cincinnati, Mr. Justice Story said:

"And even when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, . . . if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests, or obligations of the parties; in all such cases courts of equity will refuse to decree any specific performance upon the plain ground that it would be inequitable and unjust." (p. 174.)

In *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587, 23 L. Ed. 328, where mining property covered by a deed of trust had been bought by a director of the company and operated for his own profit for several years, the company brought suit to avoid the sale. The complainant was nonsuited and appealed. In an opinion affirming the judgment Mr. Justice Miller said:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for $1,000 as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

"While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement and but little change in value, the class of property here considered, subject to the most rapid, frequent and violent fluctuations in the value of anything known as property, requires prompt action in all who hold an option whether they will share its risks or stand clear of them." (p. 592.)

In 40 C. J. 953 it is said:

"The rule that where the character of the property is such that it is liable to sudden fluctuations of value, time is of the essence of contracts relating thereto is especially applicable in case of mining property; and such property requires, and of all properties perhaps the most requires, the persons interested in it to be vigilant and active in asserting their rights. Hence it is uniformly held that time is of the essence of the contract in the case of an option on mining property, or a contract for the sale thereof, even though there is no express stipulation to that effect. In accordance with this rule the optionee or prospective purchaser must perform his obligations within the time specified, or if no time is specified, within a reasonable time, unless a valid excuse exists for a delay in such performance, or unless there has been a waiver of this requirement."

Instructive cases where these principles were applied are: *Taylor v. Salt Creek Consol. Oil Co.*, 285 Fed. 532; *Stuckrath v. Briggs & Turivas*, 329 Ill. 555; *Nelson v. Hamra,* 127 Okla. 141; *Beckett v. Kornegay,* 150 Va. 636.

Viewing the allegations of the answer, whose truth is conceded by the demurrer, we have a case where plaintiffs waited for fifteen months while oil and gas explorations were going on in the neighborhood of the Campbell lands before they sought to exercise the options conferred on them by their father's will. When that exploration for gas and oil had progressed far enough to affect the value of the Campbell lands so greatly as to raise it from $36,000 to $150,000, their fraternal regard for their sisters' rights in their common heritage completely collapsed. Of course, courts of equity have no monitorial jurisdiction over the conduct of brothers and sisters, but the only justification for their existence is to restrain inequitable demands and to insist upon fair dealing in all matters of justiciable concern which cannot be adequately dealt with by the ordinary processes of the law.

Several obviously difficult questions of interpretation of the testator's will are eliminated by the fact that the options individually conferred on Ernest and Ralph were not exercised by them, and not exercised successively by their younger brothers (39 Cyc. 1247). What is perfectly clear is that no option to buy Mildred's "shares" in the Campbell lands was conferred upon these six plaintiffs which they were privileged to exercise *en bloc* whenever oil and gas development in that vicinity had progressed far enough to demonstrate that it would be to their advantage to do so. It follows that Mildred's title and interest in the Campbell lands are precisely the same in quality and potency as the title and interest of her brothers.

The trial court's judgment was correct, and it is affirmed.