No. 48,985

CLYDE W. SNODGRASS, *Appellant,* v. RICHARD BLOOMCAMP, *Appellee.*

(587 P.2d 316)

Opinion filed December 9, 1978.

*Charles F. Forsyth,* of Erie, argued the cause and was on the brief for the appellant.

*Timothy A. Short,* of Pittsburg, argued the cause, and *Fred Spigarelli,* also of Pittsburg, was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by plaintiff, Clyde W. Snodgrass, from an order of the Labette district court sustaining a motion for summary judgment in favor of the defendant, Richard Bloomcamp.

Stripped to its bare essentials, this is an action for partnership accounting, brought upon the dissolution of the partnership. The only items in dispute are payments made out of the partnership account for the personal benefit of Bloomcamp during the years immediately prior to dissolution. A brief statement of the facts is necessary to an understanding of the issue.

Snodgrass was the sole owner and operator of a tractor parts business in Parsons from 1921 to 1968. He also owned the realty upon which the business was conducted. On January 1, 1968, Snodgrass and Bloomcamp entered into an agreement by which Bloomcamp became an equal partner in the business. The agreement further provided that Snodgrass was to receive up to but not exceeding $5,000 above his equal share annually from the profits; when the total of such payments aggregated $25,000, Bloomcamp would become the sole owner of the business. The realty was to remain the property of Snodgrass, but the partnership was to have the use of it; the partnership was to pay insurance, taxes and upkeep, but no rent.

About two years later, Snodgrass's building was condemned by urban renewal. Snodgrass, who was in his 70's, had no interest in purchasing another building. Bloomcamp then entered into an

agreement to purchase a commercial property known as the Sunflower Sales building for the sum of $75,000, contingent upon the securing of a loan from the Small Business Administration. The SBA authorization for the loan, issued September 17, 1970, specifically required that the "Note and all instruments of hypothecation" be signed by Snodgrass and his wife, together with Bloomcamp. The promissory note subsequently given to SBA is in the principal sum of $34,000; it is executed by Clyde W. Snodgrass & Richard F. Bloomcamp, individually and as partners d/b/a SNODGRASS TRACTOR PARTS, and Esther M. Snodgrass, wife of Clyde W. Snodgrass.

On the day the note and mortgage were executed, Snodgrass, Mrs. Snodgrass, and Bloomcamp entered into a contract which we will refer to as the "side agreement." It provided in substance that SBA required Snodgrass to sign the note; that the loan was to be repaid from the proceeds of the business; that Snodgrass was to have an interest of record in the land to protect his liability; but that he was to execute a deed to Bloomcamp and place it in escrow, and upon full payment of the SBA loan the deed was to be delivered to Bloomcamp. The side agreement further provided that Bloomcamp was to "save and hold Snodgrass harmless from any and all liability by virtue of" the SBA loan. Title to the land was acquired in the names of Snodgrass, Mrs. Snodgrass, and Bloomcamp. Snodgrass and his wife executed and placed in escrow a deed to Bloomcamp.

The purchasers applied the proceeds of the SBA loan toward the purchase of the building and assumed outstanding mortgages, held locally, in the amount of $40,449.07. An exhibit indicates that Bloomcamp paid the balance of $550.93 from his personal checking account; he testified that he was reimbursed that sum by the partnership.

The business prospered in the new location. Within five years, Snodgrass, who handled the firm's finances, paid from partnership funds the SBA loan and the other three loans, together with accrued interest, and all four mortgages were released.

On the last day of April, 1975, the partnership was terminated; apparently Bloomcamp continued in the business at the same location. Bloomcamp furnished the escrow agent proof that the SBA loan was fully paid, and the deed from Snodgrass and wife to Bloomcamp was delivered to Bloomcamp and placed of record.

Snodgrass here seeks to recover from Bloomcamp half of the moneys paid out of firm profits on the SBA and the three assumed mortgages, and for improvements to the building, in the total sum of $42,113.50. Counsel stated on oral argument that the building has since been sold and the proceeds placed in escrow until this litigation is terminated.

The trial court sustained defendant's motion for summary judgment on the second day of trial. The court held that under the terms of the side agreement, which the court found to be clear and unambiguous, Snodgrass was not to be reimbursed for any proportionate share of the payments which were made to SBA; and that since there was no agreement that Snodgrass would be reimbursed for payments made from partnership earnings on the other mortgages, he could not recover, and Bloomcamp was entitled to judgment as a matter of law. Snodgrass appeals, and we reverse.

The side agreement does not purport to cover the right of either of the partners to share in the partnership earnings. It is silent as to upon whom the payments shall fall, so far as adjusting the partnership accounts is concerned. It does, however, provide that Bloomcamp was to hold Snodgrass harmless from all liability on the SBA loan; the hold harmless clause could be interpreted to give Snodgrass the right to recover from Bloomcamp any of Snodgrass's funds which were applied to payment of the SBA indebtedness. Since the agreement is in writing, we have the same opportunity as did the trial court to determine the question of ambiguity. *Craig v. Hamilton,* 213 Kan. 665, 667, 518 P.2d 539 (1974). After carefully examining the side agreement, we hold that it is easily subject to more than one interpretation, and thus oral evidence as to the intent of the parties is admissible.

Snodgrass, however, claims that there was a verbal contract between them that Bloomcamp alone was to be responsible for paying the purchase price, including the SBA mortgage and the assumed mortgages. Such an agreement is wholly outside of the contemplation of the side agreement, and we hold that plaintiff should have been given an opportunity to prove his claim. We note that Bloomcamp, at page 2 of the statement of facts in his brief filed in this court, says:

"The elder Snodgrass did not want to become responsible for the purchase of new real estate and had an agreement with Bloomcamp that Bloomcamp would pay for

the real estate to be occupied by the partnership and that when he did, the deed would be delivered to him. . . .

". . . Bloomcamp agreed to pay the [SBA] loan."

Bloomcamp testified that he personally agreed to pay $75,000 for the land; that Snodgrass didn't want anything to do with the building; and that Snodgrass "never agreed to help me pay for the building or the land."

Apparently both parties now agree that as between the partners, the responsibility was that of Bloomcamp to pay for the real estate. At any rate, plaintiff is entitled to attempt to prove his claim that the obligation was Bloomcamp's, that the parties had an oral agreement to that effect, but that it was in fact paid out of funds in which Snodgrass had a half interest.

None of the agreements before us speak clearly to the rights of one partner when partnership funds have been applied for the sole benefit of the other. Even in the absence of an express contract, however, a retiring partner is entitled to a fair accounting. In *Peterson v. Peterson,* 186 Kan. 234, 349 P.2d 870 (1960), we said:

"In an action to determine the rights of the parties and for an accounting upon the dissolution of a partnership farming operation, the record is examined and it is *held* the trial court as a court of equity had full power to do equity between the parties and, based upon the facts, to make its decree to accomplish a fair settlement of their rights." (Syl. ¶ 1.)

We find nothing in our partnership law which would deny Snodgrass the right to recover his fair share of funds paid out of the partnership profits for the benefit of the other partner.

The Uniform Partnership Act, K.S.A. 56-301 *et seq.,* provides in pertinent part as follows:

"**56-318.** The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

"(*a*) Each partner shall . . . share equally in the profits and surplus remaining after all liabilities, *including those to partners,* are satisfied . . . .

"(*b*) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by the partner in the ordinary and proper conduct of its business, or for the preservation of its business or property.

. . . . .

"**56-338.** (*a*) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his or her co-partners . . . unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash *the net amount owing to the respective partners.*

. . . .

"56-342. When any partner retires . . . and the business is continued . . . without . . . settlement of accounts as between the partner . . . and the person . . . continuing the business, unless otherwise agreed, the partner . . . as against such persons . . . may have the value of the partner's interest at the date of dissolution ascertained, *and shall receive* as an ordinary creditor *an amount equal to the value of his or her interest in the dissolved partnership with interest.* . . .

"56-343. The right to an account of the partner's interest shall accrue to any partner . . . as against the . . . person . . . continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." Emphasis supplied.

Bloomcamp argues that he neither authorized nor requested Snodgrass to pay the loans off early, and that he opposed such payments because of the favorable rate of interest. He contends that such action by Snodgrass is indicative of "unclean hands" because the money could have been invested more profitably. The argument is specious and untenable. Payment of debts for which the partnership was liable in no way indicates bad faith, and in no way excuses Bloomcamp from any obligation he has to his partner.

We have considered the other points raised, and conclude that the trial court did not err in receiving plaintiff's deposition into evidence, or in its ruling holding the offer of settlement and compromise was not admissible for the purpose for which it was offered.

The trial court erred in its construction of the side agreement, and in entering summary judgment against the plaintiff when material issues of fact remained in dispute.

The judgment is reversed and the case is remanded to the district court for further proceedings in conformity with this opinion.