(606 P.2d 491)

No. 50,264

LILLY K. SMERCHEK, *Appellee,* v. J. R. HAMILTON and E. W. HALEY, *Appellants.*

Opinion filed February 15, 1980.

*John C. Frieden* and *Wesley A. Weathers,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, for appellants.

*Robert R. Irwin,* of Irwin, Irwin & Clutter, of Topeka, for appellee.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This action was brought by the plaintiff, Lilly K. Smerchek, to set aside a real estate sales agreement and to quiet title to the real estate involved. The original second party under the contract was J. R. Hamilton, one of the defendants. Hamilton subsequently assigned a one-half interest in the contract to E. W. Haley, the other defendant.

The sole issue is whether the trial judge erred in finding that part of the contract dealing with the defendants' option to purchase upon the death of plaintiff violated the rule against perpetuities and thus is void.

As we view the case, the question is first whether the agreement is ambiguous and, if not, did the trial court err in its decision which is based on the premise that the defendants' rights are exercisable after the plaintiff's death *only* if her estate or her heirs desire to sell the property. The plaintiff and Hamilton entered into a contract entitled "Option and First Right of Refusal." The agreement, in pertinent part, reads:

"That party of the first part, for and in consideration of the sum of One Hundred Dollars ($100.00) and other good and valuable consideration, receipt of which is hereby acknowledged by first party, does grant to second party the exclusive

option and right of first refusal to purchase the real estate hereinafter described, upon the happening of the following:

"1. In the event that first party, during her lifetime, desires to sell the real estate hereinafter described, the second party shall have the exclusive right to purchase the property on the terms hereinafter set forth.

"2. Upon the death of first party, second party shall have the exclusive right to purchase the property hereinafter described, upon the terms and conditions hereinafter set forth, from the heirs or estate of first party.

"The real estate involved is as follows: [description omitted] together with all improvements situated thereon, for the sum of Fifteen Hundred Dollars ($1500.00) per acre for net, unencumbered acres, which shall include all of the above-described real estate. The option and right of first refusal shall take effect upon second party being notified of first party's desire to sell, or first party's death, and the option period shall run from thirty (30) days after receipt of such written notice."

Over the years, certain basic concepts of law have become firmly established when a contract is alleged to be ambiguous. Parties to a contract should be bound by the strict terminology of that contract unless such terminology is ambiguous or unless there was a mistake involved. *Schlatter v. Ibarra,* 218 Kan. 67, 74-5, 542 P.2d 710 (1975). Determining whether a written contract is free from ambiguity is a judicial function. *Hird v. Williams,* 224 Kan. 14, 16, 577 P.2d 1173 (1978). The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings. *Duffin v. Patrick,* 212 Kan. 772, Syl. ¶ 4, 512 P.2d 442 (1973). Once the court decides this question of law and determines the contract to be unambiguous, the intention of the parties and the meaning of such a contract are to be deduced from the plain, general and common meaning of those terms. *Duffin* at 778.

In the case at bar, the trial court made no finding as to whether the contract was or was not ambiguous insofar as it related to defendants' right to purchase upon the death of plaintiff. The trial judge did not interpret the agreement in light of the rule against perpetuities when evidence was being taken. That issue appears to have been raised and considered for the first time by briefs received after evidence was taken and the case submitted. Such a finding would not be binding on this Court, in any event, for when a contract is in writing an appellate court has the same opportunity as the trial court to determine the question of ambiguity. *Snodgrass v. Bloomcamp,* 225 Kan. 65, 67, 587 P.2d 316 (1978).

Plaintiff's position is that the agreement is ambiguous because the terms "option" and "first right of refusal" (also known as a "right of preemption") are used loosely, thus confusing what type of interest was actually granted to defendants and when they are entitled to purchase the property. Plaintiff interprets the agreement to mean that defendants have no true option to purchase under the agreement, but only a right of preemption if she should desire to sell during her lifetime, and that defendants' rights would be no greater upon her death. Under plaintiff's interpretation, as was adopted by the trial court, her estate or her heirs retain the right to elect whether to ever sell the land, and defendants acquire no purchase rights at all until plaintiff's estate or her heirs decide to sell and give notice of such decision to defendants.

If plaintiff's contentions are correct, then the trial court's decision is correct. An option to purchase and a right of preemption differ significantly, as was set forth in *Anderson v. Armour & Company,* 205 Kan. 801, 473 P.2d 84 (1970):

"A right of pre-emption differs from an option in that a pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption at the stipulated price, and upon receiving such an offer, the pre-emptioner may elect whether he will buy, and if he elects not to buy, then the owner of the property may sell to a third party." 205 Kan. 801, Syl. ¶ 1.

The rule against perpetuities is not without exceptions, but basically it provides that no future interest in property can lawfully be created unless it will vest within twenty-one years after some life or lives in being at the time of the creation of the interest, plus actual periods of gestation. *Trustees of Endowment Fund of Hoffman Memorial Hosp. Ass'n. v. Kring,* 225 Kan. 499, 501, 592 P.2d 438 (1979). The rule against perpetuities should not be applied when it is possible for the court to give an instrument a construction leading to its validity. *Singer Company v. Makad, Inc.,* 213 Kan. 725, 732, 518 P.2d 493 (1974). The law favors a construction which will make a contract valid rather than invalid unless that construction is required by the terms of the agreement in the light of surrounding circumstances. *Brooker v. Brooker,* 214 Kan. 89, Syl. ¶ 3, 519 P.2d 612 (1974). In ruling upon whether a future interest violates the rule against perpetuities, speculation

concerning the probabilities of various subsequent developments is not indulged in by the courts, it being a sufficient violation of the rule if an interest might possibly vest beyond the period permitted. *In re Estate of Freeman,* 195 Kan. 190, Syl. ¶ 2, 404 P.2d 222 (1965). Kansas long ago recognized that contracts very similar to the one in the case at bar are subject to the rule against perpetuities when the right of preemption runs for an indefinite period of time. In *Henderson v. Bell,* 103 Kan. 422, 424-25, 173 Pac. 1124 (1918), the parties entered into a contract whereby the sellers, in the event they decided to sell at any time in the future, agreed to first offer the property to another party at a specified price. The Kansas Supreme Court held the contract void, stating:

"The rule against perpetuities is a part of the law of this state. (*Lasnier v. Martin,* 102 Kan. 551, 171 Pac. 645.)

"By the contract, if Bell should elect to sell the property, he must first offer it to the Buchanans. The contract, if enforceable, gave to the Buchanans the right to purchase the property at some future, indefinite, unknown time; and Bell can be compelled to convey the property to the Buchanans at such time for the price named. Bell cannot sell the property to any person without first offering it to those holding under the contract. When sold under the contract, the property must be sold at $65 an acre, although at that time it may be worth $1,000 an acre. Bell does not have an absolute, uncontrolled right to sell the property at any time that he may see fit. It follows that the Buchanans and those holding under them, either as assignees or heirs, would hold a right to obtain an interest in the property running for an indefinite period of time. That right would be held in violation of the rule against perpetuities. (*Winsor v. Mills,* 157 Mass. 362; *Starcher Bros. v. Jeff Duty,* 61 W. Va. 373; *Woodall v. Bruen,* 76 W. Va. 193; Gray, The Rule Against Perpetuities, 3d ed., § 330.)"

Here, the defendants argue that the agreement is clear and unambiguous, that defendants possess a right of preemption during plaintiff's lifetime and acquire an *option* to purchase the property upon plaintiff's death. Simply stated, defendants' position is that upon plaintiff's death the option to purchase is exercisable by defendants, and the heirs have no choice of whether or not to offer the property for sale after plaintiff's death; they merely have a right to force plaintiff to exercise that option by giving notice of plaintiff's death, thereby forcing defendants either to exercise that option within thirty days or lose it. We agree with defendants' contention. The trial judge found that the defendants hold only a right of preemption during the lifetime of plaintiff. None of the parties question that finding. In our opinion, the agreement provides for an option to purchase on plain-

tiff's death. We believe the trial judge erred when he reasoned the heirs might never elect to sell the land and found void as a violation of the rule against perpetuities that part of the contract reading:

"Upon the death of first party, second party shall have the exclusive right to purchase the property hereinafter described, upon the terms and conditions hereinafter set forth, from the heirs or estate of first party."

The right to purchase is contained in two separately numbered subparagraphs. The first paragraph contains a right of preemption which is "triggered" by plaintiff's *desire to sell* during her lifetime. The second paragraph, which was found to be in violation of the rule against perpetuities, does not mention a desire to sell and is not contingent upon the desires of the heirs or estate of the plaintiff—the only event necessary to bring the option contained in subparagraph two into play is plaintiff's death. A similarly constructed instrument was interpreted by the Arizona Court of Appeals in *Tovrea v. Umphress,* 27 Ariz. App. 513, 556 P.2d 814 (1976). The instrument there provided in pertinent part:

" '(1) If First Party [Della] shall desire to sell or dispose of said premises, or any interest therein, or part thereof, she shall before selling or disposing of or attempting to sell or dispose of said premises, or any interest therein, or part thereof, give written notice of such desire to First [*sic*] Party, and Second Party [Tovrea Packing Company] may within fourteen (14) days after the receipt of such notice, exercise its said option . . . . If, under the circumstances and within the time and manner aforesaid, Second Party shall fail so to exercise said option, the same shall thereupon wholly lapse and determine.

" '(2) In the event First Party does not sell or dispose of said premises as aforesaid during her lifetime, and if Second Party's said option shall not theretofore have lapsed and determined, as provided in the foregoing paragraph (1) hereof, then Second Party, within one year after the death of First Party, may exercise its said option by giving written notice of its intention so to do to the executor or administrator of the estate of First Party.' " 27 Ariz. App. at 515.

The Arizona court interpreted this language to create a two-part legal effect; a preemption during the first party's lifetime and an option for one year after her death. The Arizona court held that such an agreement did not violate the rule against perpetuities or the rules against restraints on alienation.

Tennessee had occasion to consider an analogous clause in *Hall v. Crocker,* 192 Tenn. 506, 241 S.W.2d 548 (1951). The Tennessee Supreme Court was asked to interpret the following language in a deed:

" 'It is hereby expressly agreed and understood that should the said Leehentz Bowles desire to sell this land or should she die then the said W. L. Morris or his legal representatives shall have the exclusive right to buy the same at the actual cost of improvements on said land should he so desire.'

" 'To have and to hold to the said Leehentz Bowles her heirs and assigns forever.' " 192 Tenn. at 508-09.

In holding the clause not void as in violation of the rule against perpetuities, the court held:

"If the option in question had stopped with an option to buy when it was said that the said 'Bowles desire to sell this land' then unquestionably this option would have been violative of the rule against perpetuities and void because she might desire at any time to sell it and yet she or her heirs might never desire to sell it. Such contracts are universally held to be within the inhibition of the rule against perpetuities. A contract which by possibility may not take effect until after lives in being and 21 years and the period of gestation is ipso facto and ab initio void. In other words the interest is void for remoteness if, at its creation, there exists a possibility that it may not take effect during any fixed number of now existing lives, nor within 21 years and the period of gestation after the expiration of such lives, even though it is highly probable or indeed almost certain, that it will take effect within the time prescribed. The language used in the option in the instant case though goes further and fixes a definite time within this prescribed period when the optionee may exercise this option. The language of the contract says that 'should die' that then Morris or his representatives have the exclusive right to purchase this land. This is a fixed time within the prohibitive period. Of course under the laws of nature Mrs. Bowles must die and she is a party living when the contract is made and the option must be exercised when she dies or in her life if at all, consequently the option in question does not violate the rule against perpetuities." 192 Tenn. at 510-11.

It seems improbable defendant Hamilton would have agreed to the option with the plaintiff if the possibility had existed that he personally *never* would be able to purchase the property—the likely result if plaintiff's heirs were to have the right to decide not to sell the property for another generation. Furthermore, plaintiff's counsel at trial seemed to agree with this construction when he stated:

"The contract specifies upon the death of Mrs. Smerchek, the estate shall offer it to John Hamilton, and he has 30 days in which to turn it down. Now, if that isn't in the contract, then my name isn't Craig Irwin."

Plaintiff also argues that the conjunction "and" used between the terms "exclusive option *and* first right of refusal" throughout the instrument indicates the two are nonseverable and that the right of first refusal applies to *both* triggering events. As we view the caption of the instrument, it calls for *both* an option *and* a first

right of refusal. Under plaintiff's interpretation, no option would be created by the agreement, only a first right of refusal. In any event, this argument is largely academic, for the true nature and character of a document is not determined by the name attached thereto but by the intent of the parties as reflected by the terms or the contents thereof. *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, Syl. ¶ 2, 531 P.2d 41 (1975).

We are of the opinion that defendants or their heirs have an absolute right under the agreement to purchase the property upon the death of plaintiff whether or not plaintiff's heirs or her estate desire to sell. If the clause violates the rule against perpetuities, it must be by virtue of its reference to "terms and conditions hereinafter set forth" which provide that the option to purchase will expire thirty days after written notice is delivered to defendants. The general rule is that if the purchase option must be exercised or expire within the period limited by the rule it does not violate the rule. *Shirley v. Van Every,* 159 Va. 762, 167 S.E. 345 (1933); *Rice v. Lincoln & N. W. R. Co.,* 88 Neb. 307, 129 N.W. 425 (1911); see also Annot., 66 A.L.R.3d 1294.

The question in this case then becomes whether the option to purchase would expire within the period permitted by the rule against perpetuities. There is authority that when landowners have it within their power to terminate an option within the allotted time by giving notice, such as either the heirs or the estate in this case can do, then the rule against perpetuities would not apply since the agreement does not indicate that the parties intended the option to continue for an unlimited time. *Hidden Meadows Development Co. v. Mills,* 29 Utah 2d 469, 511 P.2d 737 (1973). The contract before us supports such a construction. As we view the contract, it simply provides that upon the death of plaintiff, defendants have an absolute right to buy the property; and in the event they are not aware of the death, plaintiff's heirs or her estate must trigger the purchase by giving written notice. We need not adopt that view, however, as we believe this issue to be controlled by *Singer Company v. Makad, Inc.,* 213 Kan. at 732-33:

"It seems generally to be agreed, as our own cases may be said to witness, that the rule against perpetuities should not be applied where it is possible for the court to give an instrument a construction leading to its validity. The rule is phrased in *Wong v. DiGrazia* [60 Cal. 2d 525, 35 Cal. Rptr. 241, 386 P.2d 817] in these words:

" '. . . Both the California cases, and those of a majority of other states, hold that a document should be interpreted if feasible to avoid the conclusion that it violates the rule against perpetuities.' (pp. 539, 540.)

"Supporting this principle of construction, see Restatement, Property, § 375; *Belfield v. Booth,* 63 Conn. 299, 27 A. 585; *Edgerly v. Barker,* 66 N.H. 434, 31 A. 900; *Plummer v. Roberts,* 315 Mo. 627, 287 S.W. 316.

"We think it not unreasonable to assume that in the hurried, competitive atmosphere of today's commercial world, experienced business people dealing at arm's length for rental space in any modern shopping area would not contemplate entering into a lease arrangement contingent on events which might not transpire until twenty-one years had gone by.

"The conclusion at which we arrive in this case is consistent with past decisions of this court to the effect that where no time has been stated for performing an act which is to be done, the law will imply that performance is to be accomplished within a reasonable time, and the want of a stipulation as to time does not necessarily render the agreement void. (*Leis v. Sinclair,* 67 Kan. 748, 74 Pac. 261; *Eakin v. Wycoff,* 118 Kan. 167, 171, 234 Pac. 63; *Price v. Brodrick,* 183 Kan. 71, 325 P.2d 387.)

"In *Campbell v. Warnberg,* 133 Kan. 246, 299 Pac. 583, the principle was expressed with respect to the exercise of an option. There, the will executed by the testator provided essentially that his sons, in specified priority, should have the right to purchase their sisters' interest in the real estate, but no time was fixed for exercising the options. The holding of the court on that point is encompassed in Syllabus 1:

" 'Where a person has an option to purchase property at a specified figure, and no time is fixed for the exercise of the option, a reasonable time is implied, and what length of time is reasonable is governed by the circumstances of the particular case.'

"A testamentary option to purchase real estate was likewise the subject of controversy in *In re Estate of Maguire,* 204 Kan. 686, 466 P.2d 358. In that case we said that 'where no time limit is specified for the exercise of a testamentary option, it must be exercised within a reasonable time.' (p. 690.)

"Our cases are consonant with the general rule found in 17 A C.J.S., Contracts, § 503(1), p. 779:

" 'Where a contract fixes no definite time for performance the law usually implies that performance shall be within a reasonable time, and this rule applies to the performance of a condition precedent, or of an act dependent on the will of the promisor.' "

Applying the *Singer* reasonable-time rule here, it is clear that a reasonable time for notice would be well within twenty-one years of plaintiff's death. It is doubtful, in fact, whether it would be necessary for notice to be given defendants before they could exercise their option after the death of plaintiff. If notice by the heirs should be construed to be necessary, defendant Hamilton could go into court and compel plaintiff's heirs to give notice after she died. To allow otherwise would circumvent the purpose of

the option by allowing the heirs to defeat the option simply by withholding notice of death.

Reversed and remanded with direction to enter judgment for the defendants.