No. 44,506

Home-Stake Production Company, *Appellee,* v. Tri-State Pipe
Company, Irving Lebow, Lillian Rubin, and Simon Lebow,
*Appellants.*

(415 P. 2d 377)

Opinion filed
June 11, 1966.

C. *Fred Ice*, of Newton, argued the cause, and *Arthur N. Turner* and *Theodore B. Ice*, both of Newton, and *Max G. Cohen*, of Tulsa, Oklahoma, were with him on the brief for the appellants.

*Kenneth G. Speir*, of Newton, argued the cause, and *Vernon A. Stroberg, Herbert H. Sizemore*, and *Richard F. Hrdlicka*, all of Newton, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action brought by plaintiff-appellee to partition a producing oil and gas lease.

There is no essential factual dispute. In 1948 defendant Simon Lebow purchased the lease in question from the original lessee who reserved an overriding royalty of a one-sixteenth interest of the seven-eighths' working interest. The lease, known as the Wiley lease, is on property in the Burrton field in Harvey County. The same year Lebow assigned a one-fourth interest therein, subject to the override (with which we are not concerned), to Sohio Petroleum Company, and, substantially concurrently, he entered into an operating agreement with Sohio whereby Lebow was to be the operator with Sohio to have oil purchase and other rights in consideration of certain obligations. Five producing wells were completed. For some time Simon Lebow operated the lease assisted by his son, Marvin. In July, 1949, Simon assigned a one-half interest in the lease to the defendant Tri-State Pipe Company. In November, 1951, he assigned a one-eighth interest in the lease to the defendant Irving Lebow, who was also president of the Tri-State Pipe Company. In August, 1955, he assigned to defendant Lillian Rubin a one-eighth interest in the lease, except for a one-sixteenth interest in the personal property and physical equipment on the lease which he retained. No other reservation of any interest was contained in these assignments which were warranted to be free of encumbrance. About six years prior to the trial of this case Simon formed a corporation, called the Simon Lebow Corporation, which thereafter operated the lease. Simon owned all the stock. The son, Marvin, was vice-president of the corporation and active manager thereof.

In 1962, plaintiff, Home-Stake Production Company, began a water flooding program in the Burrton field, it appearing that recovery of oil by primary recovery methods was approaching economic exhaustion. Having other leases in the area, plaintiff wanted to utilize the Wiley lease as a part of this program. On

February 20, 1963, one Wilkonson, on its behalf, purchased Sohio's interest in the lease, assigning it the next day to plaintiff. The interests of the parties in the lease thus become, and still are, as follows:

| | |
|---|---|
| Home-Stake Production Company | Undivided 1/4 interest |
| Tri-State Pipe Company | Undivided 1/2 interest |
| Irvin Lebow | Unvidided 1/8 interest |
| Lillian Rubin | Undivided 1/8 interest |

in said lease, and 1/16th interest in and to the personal property used in connection therewith

| | |
|---|---|
| Sibon Lebow | Undivided 1/16 interest |

in and to the personal property used in connection therewith.

Thereafter plaintiff secured approval of the State Corporation Commission to flood the area. It appears the plaintiff attempted to negotiate with defendants respecting the flooding of the Wiley lease, proposing to drill two injection wells on its adjoining leases, allocating one-half the cost to the Wiley lease. Defendants obtained a petroleum engineer's report recommending that defendants incur no expense on the Wiley lease for water flood development until the result of plaintiff's flooding on the south became apparent, and no agreement was reached between the parties. Meanwhile plaintiff had filed its partition suit. Thereafter it prepared and filed with the Securities and Exchange Commission its prospectus offering for sale fractional interests in what is termed the Home-stake 1964 Waterflood Program. This consisted of seven proposed water flood projects, one of which was referred to as the Burrton 1964 Waterflood Project, in which plaintiff's one-fourth interest in the Wiley lease was incorporated. Plaintiff sold interests in the program in the nature of speculative securities offered to the public, designated as units, based upon a total estimated cost of $7,-552,000.00 for the water flooding. The owners of such units were to become owners of direct fractional working interests in the leases comprising the program. It also appears subscribers for these units executed written authorization for plaintiff to prosecute the instant partition action to a satisfactory conclusion. Plaintiff has continued to inject water into wells on leases adjoining the Wiley lease, with the result that production of oil on the latter has substantially increased, and there is the prospect of further increase.

Upon joinder of issues by the litigants trial was had to the court. After declaring the interests of the parties the trial court made further findings of fact and conclusions of law as follows:

"2. That said oil and gas lease, together with the personal property used in connection with and appurtenant thereto, is subject to being partitioned, or if partition cannot be made without manifest injury, or is for any reason impracticable, then said oil and gas lease and the personal property used in connection therewith and appurtenant thereto, should be appraised and statutory procedure followed.

"3. That plaintiff is entitled to partition of said oil and gas lease and the personal property used in connection therewith and appurtenant thereto.

"4. That partition of said oil and gas lease and the personal property used in connection therewith and appurtenant thereto will not result in any extraordinary hardship or oppression to any of the parties in interest.

"5. That the Operating Agreement, dated the 13th day of December, 1948, between the defendant, Simon Lebow, and Sohio Petroleum Company (attached to the Answer of the Defendant, Tri-State Pipe Company, as Exhibit 'A') is no longer in effect, Simon Lebow having assigned the same to Simon Lebow Corporation, without the consent of the plaintiff; and, further, by reason that defendant, Simon Lebow, and the Simon Lebow Corporation, has no interest in the 'leasehold estate,' as contemplated and required by said Operating Agreement.

"6. That Home-Stake Production Company is not estopped from partitioning or seeking partition of said oil and gas lease and the personal property used in connection therewith and appurtenant thereto.

"CONCLUSIONS OF LAW

"1. That said oil and gas lease and the personal property used in connection therewith and appurtenant thereto should be partitioned, subject to the overriding $\frac{1}{16}$th royalty interest, as hereinabove set forth.

"2. That the Operating Agreement referred to above, should be, and is hereby declared null and void and of no further force and effect.

"3. That commissioners in partition should be appointed by the Court to partition said lease and personal property among the parties according to their respective interests, subject to said overriding royalty interest, in kind; or, if the same is not susceptible of being partitioned in kind without manifest injury, or is for any reason impracticable, then to appraise the value of the property and proceed with further matters in accordance with statutory procedure."

Judgment against defendants for partition was duly entered, defendants' posttrial motions were overruled and they have brought the matter for review here.

Prior to examining the contentions of defendants-appellants, we note that our former statute stating the requirements of a petition for partition of real property (G. S. 1949, 60-2101) was amended by Laws, 1953, Chapter 276, Section 6, by the addition of the language italicized so that it provided:

"When the object of the action is to effect a partition of real property *or an estate or interest created by an oil, gas or mineral lease or an oil or gas royalty,* the petition must describe the property and the respective interests of the owners thereof, if known."

In *Strait v. Fuller*, 184 Kan. 120, 334 P. 2d 385, this court commented on the effect of the amendment upon the right to partition oil and gas leasehold interests, as follows:

"It must appear that the legislature desired to make the rules pertaining to oil and gas interests as nearly similar to those pertaining to real property as possible. This purpose becomes even clearer when it is shown that Chapter 276 of the Laws of 1953 amended not only the section of the code with reference to partition, but also sections 60-501, 60-502, 60-510 (venue), section 60-1801 (quiet title), and section 60-2001 (ejectment). In each of these sections, words were inserted so that they should govern oil and gas interests as well as real property. It should be remembered that such oil and gas interests grow out of and are intimately connected with land and are certainly of the nature of that type of property sometimes known as chattels real. Thus the legislature had reasonable motives in deciding that they should be given the same treatment as real property." (p. 125.)

The court held that the owner of an undivided interest in an oil and gas leasehold estate may file a sufficient petition for partition thereof without alleging special reasons for the intervention of a court of equity, and further reiterated the principle that the right to partition this character of interests is subject to the court's power to protect against fraud and overreaching, relying on *Holland v. Shaffer*, 162 Kan. 474, 178 P. 2d 235, 173 A. L. R. 845.

In the 1963 reenactment of our partition statute further enlargement was made to include personal property (K. S. A. 60-1003 [a] [1]) and the equitable power of the court was recognized by the following proviso:

"(d) The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests, or may refuse partition if the same would result in extraordinary hardship or oppression."

Thus the right to compel partition of co-owned oil and gas leasehold and royalty interests is now expressly conferred by statute, subject to the equitable powers of the court.

Appellants' contentions of error fall essentially under four headings. First, they claim the operating agreement constituted a mining partnership not subject to partition. The trial court declined to find as specifically requested by appellants that a mining partnership existed. We have examined the agreement as summarized in the record before us, and we cannot say the court erred in this respect, the essential element of joint control over operations being missing. Moreover, in *Brown v. Loriaux*, 189 Kan. 56, 366 P. 2d

1016, wherein partition was sought as a result of dispute over control of operations under an oil lease, mining partnerships were discussed at length and it was stated:

"In an action to partition oil and gas leases operated as a mining partnership the trial court has the same power to make an equitable and fair partition of the property as was formerly exercised by a court of chancery." (Syl. ¶ 3.)

Appellants claim the operating agreement precluded partition. Concededly it contained no express provision barring partition but it is contended that by implication therein partition is prohibited and that plaintiff, referred to hereinafter as appellee, is estopped from asserting any right thereto.

The agreement covered two other leases besides the Wiley lease in neither of which any of appellants now own an interest. It described Lebow as the operator for the joint account of the parties, Sohio as non-operator; it recited the conveyance by Lebow to Sohio of a one-fourth interest in the Wiley lease and provided for development of the lease with drilling of such wells as might be mutually agreed upon, with Sohio to furnish casing for certain wells; costs of operation were to be shared three-fourths by the operator and one-fourth by the non-operator; consent was to be obtained for expenditures of over one thousand dollars; there was a proviso that if either party desired to drill a well and the other did not, on notice and such refusal to join, the party drilling the well had the right to obtain that portion of the lease in the spacing pattern by assignment from the other; oil produced was to be shared in kind subject to Sohio's right to purchase; the agreement also provided for common ownership of materials and equipment and contained a complete schedule of charges and accounting according to the standard Mid-Continent form in general use in that field; provision was made for the abandonment of a well and the right of one party to take it over on payment of salvage value, and the agreement further provided it should remain in force so long as any jointly owned lease covered thereby should remain in effect and until completion of salvage operations and a final accounting between the parties.

Appellants claim Simon Lebow and Sohio determined by this agreement that they wished to operate this lease until it was abandoned, that partition would be inconsistent with this, and that if the parties had desired to preserve the right of partition they should and would have so stated in the contract. We are unable

to draw any such conclusions from the agreement and we cannot insert in it provisions which are not there. The fact that further development was contemplated in the future would not constitute an implication against future partition inasmuch as cost was to be borne proportionately to interest and mutual cooperation was essential to development.

A somewhat analogous situation was presented in *Delta Drilling Co. v. Oil Finance Corporation*, 195 La. 407, 196 So. 914, wherein partition was sought by one holding an undivided interest in a producing oil and gas lease who was also the operator under a contract with the co-lessees. The court in effect held that the fact that one party had the exclusive right and duty to manage operations did not imply any agreement that either party should not have the right to force partition, and further that the fact the parties may not have contemplated partition at the time of entering into the agreement was not a sufficient reason for implying an agreement that there should be no partition in the future. We think those principles are applicable here.

We find nothing in the agreement diluting the right to partition and nothing which can be considered as impliedly prohibiting it, nor do we find any estoppel to assert that right by acquiescence on the part of appellee. While it is not shown directly in the record that Simon Lebow had assigned his interest in the operating agreement to the Simon Lebow Corporation as found by the trial court, this is of no particular significance. It was shown he had no interest in the lease as contemplated by the operating agreement, and the trial court committed no prejudicial error in treating the latter as it did.

Appellants contend that partition of the lease constitutes oppression and results in hardship on them which should be prevented on equitable principles. The basis for this is the fact appellants had owned their interests several years under amicable relations and those interests have been largely depreciated out for income tax purposes so that sale would result in a large capital gain tax. In the recent case of *Curry v. Perney*, 194 Kan. 722, 402 P. 2d 316, which arose under our present partition statute, this court held a cotenant is not required to forego partition because of the pecuniary circumstances of the other saying:

"The equities to which the statute refers are those which may be enjoyed jointly without partition." (p. 726.)

Appellee argues there are countervailing equities on its side, such as the greatly increased oil production and the enhancement of the value of appellants' property by reason of appellee's expenditures toward which appellants have been unwilling to contribute. It is hardly the province of this court to weigh the conflicting equities. This is best left to the trial court in the exercise of the broad powers available to it in this type of action. As was said in *Johnson v. Burns*, 160 Kan. 104, 159 P. 2d 812:

"Ordinarily where there is as wide a discretion reposed in a trial court as is reposed in it in partition actions we are reluctant to interpose our judgment for that of the trial court." (p. 111.)

Appellants contend that appellee is not the real party in interest by reason of the sale during the pendency of this action of units comprising the Burrton 1964 Waterflood Project and that these participants should have been joined as additional parties. The record is not entirely clear as to the status of these sales, that is, whether they have progressed beyond the subscription stage and whether any assignment of interests has actually occurred. In any event this is of no moment. The record is clear that appellee is still the record holder of an undivided interest in the lease. K. S. A. 60-217 (*a*) provides:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, receiver, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. . . ."

And K. S. A. 60-225 (*c*) provides:

"In case of any transfer of interest, the action may be continued by or against the original party, unless the court, upon motion, directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. . . ."

The written authorizations by the participants in the water flood program for appellee to proceed with this action were before the trial court and we think, under the authority of the aforesaid statutes, the court committed no error in rendering judgment as it did.

We have not overlooked other matters urged by appellants for reversal of the trial court's judgment. The essential findings necessary to such judgment were supported by the evidence. We find nothing warranting a reversal of that judgment and it is affirmed.

APPROVED BY THE COURT.