No. 68,420

Rosalyn W. Gore, *Appellant*, v. Robert M. Beren, *Appellee*, and T.J. Land & Cattle Company and Mid Kansas Jewish Federation, Inc., *Defendants.*

(867 P.2d 330)

Opinion filed January 21, 1994.

*George C. Bruce*, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Brian S. Burris* and *Ellen Tracy*, of the same firm, were with him on the briefs for appellant.

*Thomas D. Kitch*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Jordan E. Clay*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This appeal involves the trial court's dismissal of a partition action because the land was subject to a real estate agreement which contained a "right of first refusal" provision. The Court of Appeals affirmed the trial court in an unpublished opinion filed May 14, 1993.

The facts are undisputed. The property was purchased in 1962 by Theodore Gore, Robert M. Beren, and Theodore I. Leben. They entered into an agreement effecting the cotenancy. The agreement contained a "preemptive right" or "right of first refusal" provision which is now the center of controversy. The provision provides:

"The parties hereto further agree that should any party hereto desire to sell all or any part of his interests in either or both of said parcels of land, he shall promptly give written notice to the other co-tenants with full and complete information concerning the terms of the proposed sale, and the other co-tenants shall then have an option and prior right for a period of twenty (20) days after the receipt of said written notice to purchase the interest of the party desiring to sell said interest on the same terms and conditions which the selling party proposes to sell. There shall be no preferential right to purchase where any co-tenant wishes to mortgage his interest or to dispose of his interest by sale or transfer thereof to a corporation in which said co-tenant owns or controls a majority stock interest. Any sale contemplated by this paragraph shall refer to and mean a bona fide sale.

"This agreement is binding upon the parties hereto and their respective heirs, administrators, executors and personal representatives."

Theodore Gore is deceased. His interest in the property is now owned by his widow, Rosalyn W. Gore, the plaintiff in this case. Theodore I. Leben's interest was transferred to T.J. Land & Cattle Company, a corporation. Mid Kansas Jewish Federation, Inc., also owns an undivided interest in three of the seven parcels of land subject to the agreement. The defendant, Robert M. Beren, is the only remaining signatory of the agreement who owns an undivided interest in the property.

On July 16, 1991, representatives of the Gore and Leben interests offered to purchase Beren's interest in the property or to sell to Beren their interests in the property. Beren declined to buy or sell in accordance with the terms stated in the July 16, 1991, letter.

Rosalyn W. Gore then filed this partition action. Beren answered that the 1962 agreement waived, modified, or revoked the right to partition the subject real estate. Gore named the other cotenants as defendants. T.J. Land & Cattle Company and Mid Kansas Jewish Federation, Inc., have not entered an appearance in the case and are not participating in this appeal.

The case was submitted to the trial court for decision based on a stipulation of facts and trial briefs. The trial court found:

"1. The 1962 Agreement (Agreement) executed by Theodore Gore, Robert M. Beren, and Theodore I. Leben created a right in these parties commonly referred to as a 'right of first refusal' or a 'preemptive right,' which requires any party to the Agreement who desires to sell his undivided interest to:

"a. obtain a bona fide offer from a third party to buy the undivided interest on specific terms the third party is ready, willing and able to comply with;

"b. promptly give written notice of the proposed sale to the other parties to the Agreement;

"c. include in the written notice full and complete information of the terms and conditions of the sale;

"d. allow the other parties to the Agreement twenty days to purchase the undivided interest on the same terms and conditions the third party is willing to give.

"2. By entering into the Agreement, the original parties thereto waived their right to partition the property until such time as they complied with the terms of the Agreement summarized in paragraph 1 above.

"3. The Agreement is valid and binding on the original parties to the Agreement and is enforceable by any original party against any other original party and any successors in interest to such original party. Consequently,

the Agreement is binding on plaintiff who has succeeded to the interest of her husband, Theodore Gore.

"4. The July 1991 letter relied on by plaintiff fails to comply with the requirements of the Agreement summarized ·in paragraph 1 above.

"WHEREFORE, having found that plaintiff's predecessor in interest waived his right to partition to plaintiff's undivided interest in the subject property without first complying with the Agreement and that plaintiff's July 1991 letter does not constitute compliance with such Agreement, the Court holds that plaintiff has no right to bring the current action seeking partition and that such partition action must be dismissed."

On appeal, Gore contended that the preemptive right (right of first refusal) provision does not absolutely waive the right to partition and, alternatively, that the provision violates the rule against perpetuities. The Court of Appeals did not address the waiver of partition issue but affirmed the trial court, stating:

"In the present case, the trial court interpreted the agreement in such a way that it does not violate the rule against perpetuities. The trial court held the contract is enforceable only by the original parties to the agreement—all lives in being.

"We are unable to hold that no reasonable person would rule as the trial court did.

"The trial court interpreted the contract, feasibly, to avoid application of the rule against perpetuities. It did so reasonably and properly."

Gore sought review by this court, which we granted.

Gore argued at trial and in her brief in the Court of Appeals that the preemptive right provision of the Agreement did not absolutely waive her right to partition. The trial court found that Gore's predecessor in interest did waive the right to partition until such time as Gore received a bona fide offer from a third party and provided notice of such offer to Beren, giving Beren the opportunity to exercise his right of first refusal.

This court has addressed the scope of rights a property owner has, including the right to partition.

"Partition provides a method whereby two or more persons who own property together may put an end to the multiple ownership, so that each may own a separate portion of the property or, if a division in kind is not feasible, the property may be sold and each owner given an appropriate share of the proceeds. It is said to be a right much favored in the law because it secures peace, promotes industry and enterprise, and avoids compelling unwilling persons to use their property in common. 59 Am. Jur. 2d, Partition, sec. 3, p. 773. The right of partition is said to be an incident

of common ownership. 68 C.J.S., Partition, sec. 21, p. 33." *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977).

In *Miller*, 222 Kan. 317, Syl. ¶ 4, we stated:

"The right of partition is considered an incident of common ownership. It is based on the equitable doctrine that it is better to have the control of property in one person than in several who may entertain divergent views with respect to its proper control and management. The general rule therefore is that all property capable of being held in cotenancy is subject to partition by judicial proceedings, the partition being either in kind or by appraisal and sale."

See *Mulsow v. Gerber Energy Corp.*, 237 Kan. 58, 61, 697 P.2d 1269 (1985); *Hall v. Hamilton*, 233 Kan. 880, 882, 667 P.2d 350 (1983).

Beren argues that in the agreement among Beren, Leben, and Theodore Gore the right to partition was waived by implication unless the party seeking partition first obtains a bona fide offer from a third party and then offers to sell his or her interest to the other parties to the agreement. Conversely, Gore argues that, although a preemptive right provision in a contract may waive the right to partition, "such a preemptive right provision is only a conditional waiver of the partition right, and not an absolute waiver," suggesting that by offering to sell her interest to Beren she complied with the Agreement and her right to partition was restored. Neither party disputes that the terms of the agreement entered into by Theodore Gore are binding on Gore as her husband's successor in interest. See *Ortmann v. Kraemer*, 190 Kan. 716, 719, 378 P.2d 26 (1963).

"[I]t is well established that a cotenant may waive his right of partition by an express agreement." *Ortmann*, 190 Kan. at 720.

"Although partition is a right much favored, nevertheless it has generally been held that a cotenant is not entitled to partition where he has entered into an agreement not to partition. The agreement acts as an estoppel, or constitutes a waiver of the right to partition. . . . Not only is the cotenant who entered into the agreement not to partition bound thereby, but the courts have recognized that a cotenant deriving title through an instrument containing such an agreement is also bound." 59A Am. Jur. 2d, Partition § 58, p. 43.

Waiver of the right to partition may also be implied.

"The courts have generally recognized that the agreement not to partition may be implied, as well as express. An agreement not to partition is implied

where the purpose of the transaction would be defeated by partition. For instance, an agreement giving cotenants rights of first refusal implies an agreement not to bring a partition action in lieu of a sale to the cotenants." 59A Am. Jur. 2d, Partition § 61, p. 45.

But see *Drachenberg v. Drachenberg*, 142 N.J. Eq. 127, 134, 58 A.2d 861 (1948) ("The right of partition between co-tenants is an absolute right which should not be denied in the absence of an explicit agreement not to resort to partition.").

Neither this court nor our Court of Appeals has specifically held that an agreement not to partition may be implied; however, this court has implied that such is the case. See *Home-Stake Production Co. v. Tri-State Pipe Co.*, 197 Kan. 163, 169, 415 P.2d 377 (1966) ("We find nothing in the agreement diluting the right to partition and nothing which can be considered as impliedly prohibiting it.").

The parties here cite numerous cases from other jurisdictions which have held that a preemptive right or right of first refusal provision impliedly or expressly waives the right to partition until the provision is complied with. See *Harrison v. Domergue*, 274 Cal. App. 2d 19, 21, 78 Cal. Rptr. 797 (1969) ("An agreement giving rights of first refusal to the other tenants implies an agreement not to bring a partition action in lieu of a sale to the cotenants."); *Schwartz v. Shapiro*, 229 Cal. App. 2d 238, 253, 40 Cal. Rptr. 189 (1964) ("[T]he absolute right to partition has been modified by [a] writing to the extent that before partition can be had the selling owner must first offer his interest to the co-owner. Upon the non-selling owner's refusal or failure to exercise his right to purchase within a reasonable time, the seller has discharged his obligation to his co-owner and he may proceed with partition."); *Rhodes v. Lane*, 202 Ga. 608, 610, 44 S.E.2d 114 (1947) (agreement not to sell or otherwise dispose of property jointly held without first offering it to the cotenant barred partition until the property was offered to and refused by the cotenant); *Bessen v. Glatt*, 170 App. Div. 2d 924, 925, 566 N.Y. S.2d 750 (1991) ("Partition is not warranted where, as here, tenants in common expressly agree not to partition the property until the nonselling party has the opportunity to purchase the sellers' interest."); *Tramontano v. Catalano*, 23 App. Div. 2d 894, 260 N.Y.S.2d 269 (1965) ("[T]he parties' agreement that

neither set of owners would sell their one-half interest without first offering it to the other set of owners encompassed an agreement not to partition except upon that condition."); *Inter-City Properties, Inc. v. Gibbs*, 560 S.W.2d 503 (Tex Civ. App. 1977) (agreement between three cotenants granting, among other provisions, preferential rights to purchase constituted waiver of right to partition); *Sibley v. Hill*, 331 S.W.2d 227, 229 (Tex Civ. App. 1960) (operating agreement which included a preferential right to purchase clause contracted away the absolute right of partition).

Even though the right to partition may be implicitly waived,

"[i]t is not true, however, that each and every covenant or provision relating to property held in common carries with it the implication that no partition shall be had; and consequently it is necessary in each case to examine the particular contract involved and from the provisions thereof determine whether or not the parties impliedly contracted against partition." 68 C.J.S., Partition § 44, p. 67.

The agreement entered into among Beren, Leben, and Theodore Gore did not expressly waive the right to partition. It does, however, appear that Beren, Leben, and Theodore Gore impliedly waived the right to partition by entering into the agreement. The relevant portion of the agreement states:

"The parties hereto further agree that should any party hereto desire to sell all or any part of his interests in either or both of said parcels of land, he shall promptly give written notice to the other cotenants with full and complete information concerning the terms of the proposed sale, and the other cotenants shall then have an option and prior right for a period of twenty (20) days after the receipt of said written notice to purchase the interest of the party desiring to sell said interest on the same terms and condition which the selling party proposed to sell. There shall be no preferential right to purchase where any cotenant wishes to mortgage his interest or to dispose of his interest by sale or transfer thereof to a corporation in which said cotenant owns or controls a majority stock interest. Any sale contemplated by this paragraph shall refer to and mean a bona fide sale."

The trial court held that "[b]y entering into the Agreement, the original parties thereto waived their right to partition the property until such time as they complied with the terms of the Agreement [concerning the preemptive right]." Therefore, the trial court held that Beren, Leben, and Theodore Gore impliedly waived the right to partition by entering into the Agreement.

The cases cited by the parties hold that waiver of the right to partition may be implied. However, in most of the cited cases the waiver of the right to partition is only temporary and only in lieu of offering to sell the property to the cotenants; upon offering to sell to the cotenants in accordance with the agreement and the cotenants' refusal to exercise the preemptive right, the right to partition is restored. An implied waiver is only temporary; therefore, after meeting certain conditions the right to partition is restored.

Because implied waiver of the right to partition is based on interpretation of a contract or agreement between cotenants, whether an agreement constitutes an implied waiver of the right to partition and the extent of that implied waiver or the condition for restoring the right to partition should be determined on a case-by-case basis. See, *e.g.*, 59A Am. Jur. 2d, Partition § 61; 68 C.J.S., Partition § 44, p. 67. Thus, not every instance where cotenants agree to a preemptive right or right of first refusal provision is automatically deemed to imply waiver of the right to partition. Because the right to partition enjoys a favored status in the law and is "based on the equitable doctrine that it is better to have the control of property in one person than in several who may entertain divergent views with respect to its proper control and management," *Miller*, 222 Kan. 317, Syl. ¶ 4, any agreement which purports to waive the right to partition should be strictly construed.

Gore and Beren assert different interpretations of the Agreement. Beren contends that the preemptive right provision requires Gore to obtain a bona fide offer from a third party before offering her interest to Beren and before the right to partition may be invoked. The trial court adopted this construction. Gore, on the other hand, contends that no offer from a third party is required and that, by making an offer herself to her cotenants, she has complied with the provision and therefore is now entitled to invoke the right to partition.

The rules of contract interpretation are well established: "The interpretation of a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning. An ambiguity in a contract does not appear until two or more meanings can be construed from

the contract provisions." *Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 1, 809 P.2d 1194 (1991).

"Whether an instrument is ambiguous is a matter of law to be decided by the court. As a general rule, if the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992).

Here, neither party contends the preemptive right is ambiguous.

"Regardless of the construction of a written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by an appellate court." *Simon*, 250 Kan. 676, Syl. ¶ 3. "In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided." *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, Syl. ¶ 1, 822 P.2d 64 (1991); *Barnhart v. McKinney*, 235 Kan. 511, Syl. ¶ 7, 682 P.2d 112 (1984).

We are not dealing with neophytes here. The parties to this agreement were sophisticated businessmen experienced in complicated business transactions involving large sums of money. They were not strangers to written contracts. This particular contract, like most contracts that end in litigation, is not as clear as it could and should be concerning what the parties intended. Obviously the parties knew and understood a buy-sell provision. The contract does not contain a buy-sell agreement. Thus, the parties do not appear to have been concerned with having each other as cotenants. The concern, and what the parties wanted to control, was having a third person or entity become a cotenant with power to force a sale either by a buy-sell provision or by partition. This property was purchased in what was then (1962) a largely unimproved rural setting, and to receive maximum value it would be necessary to hold the land for a considerable period of time.

Thus, we reach the same conclusion the trial court reached. The parties have by implication waived the right to partition the property until the preemptive right provision has been complied with as set forth earlier in this opinion.

Gore next contends that the preemptive right provision in the Agreement violates the rule against perpetuities. She argues the Court of Appeals used the wrong standard of review.

The Court of Appeals used language that is subject to more than one construction. The language "no reasonable person" implies that the Court of Appeals used an abuse of discretion standard. However, interpretation of a contract or agreement is a question of law and this court's review of questions of law is unlimited. An appellate court is not bound by a trial court's construction of a written contract. See *Simon*, 250 Kan. 676, Syl. ¶ 3. The Court of Appeals is aware of the correct standard, and we believe it used the correct standard despite the ambiguous language in the opinion.

"The rule against perpetuities precludes the creation of any future interest in property which does not necessarily vest within twenty-one years after a life or lives presently in being, plus the period of gestation, where gestation is in fact taking place." *Barnhart*, 235 Kan. 511, Syl. ¶ 3. See *Singer Company v. Makad, Inc.*, 213 Kan. 725, 729, 518 P.2d 493 (1974); *In re Estate of Freeman*, 195 Kan. 190, Syl. ¶ 1, 404 P.2d 222 (1965). "In ruling upon whether a future interest violates the rule against perpetuities, speculation concerning the probabilities of various subsequent developments is not indulged in by the courts, but it is a sufficient violation of the rule if an interest might possibly vest beyond the period permitted." *Freeman*, 195 Kan. 190, Syl. ¶ 2.

The policy considerations behind the rule against perpetuities are clear.

"The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil." *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, Syl. ¶ 8, 678 P.2d 118 (1984).

The rule was first developed "to prevent the practice of tying up family property for generations and thereby creating unreasonable restraints upon the alienation of property." *Barnhart,* 235 Kan. at 517.

Kansas has long recognized that the creation of property interests is subject to the rule against perpetuities. *Freeman,* 195 Kan. 190. Agreements creating an option or a preemptive right to purchase real estate constitute property interests which are subject to the rule against perpetuities. *Barnhart,* 235 Kan. at 516-17; *Henderson v. Bell,* 103 Kan. 422, 173 Pac. 1124 (1918). However, modern courts have recognized that the rule bears little relation to modern business practices and thus have limited application of the rule where possible, especially in commercial contexts. See *Singer Company,* 213 Kan. 725, Syl. ¶ 4; *Barnhart,* 235 Kan. at 517. "A document should be interpreted where feasible to avoid the conclusion that it violates the rule against perpetuities." *Singer Company,* 213 Kan. 725, Syl. ¶ 6; *Barnhart,* 235 Kan. at 520.

The rule against perpetuities has been codified and somewhat modified in Kansas by K.S.A. 1992 Supp. 59-3401 *et seq.,* known as the Uniform Statutory Rule Against Perpetuities. K.S.A. 1992 Supp. 59-3401 adds to the common-law "life in being plus twenty-one years" requirement that alternatively, the interest must vest or terminate within 90 years after its creation. If either of these alternatives is satisfied, the future interest does not violate the rule against perpetuities. The uniform rule supersedes the common-law rule against perpetuities. K.S.A. 1992 Supp. 59-3408. However, the uniform rule applies only to nonvested property interests which are "created on or after the effective date of this act." K.S.A. 1992 Supp. 59-3405(a). Because the property interest involved in the case at bar was created in 1962 by the Agreement entered into among Theodore Gore, Leben, and Beren, the uniform rule does not apply.

Gore argues that the Agreement is binding upon the parties and their successors in interest and therefore the preemptive right is not personal to the parties. She contends that if a party or his successor chooses never to sell his interest in the property, the preemptive right will never vest. Alternatively, even if a party

does decide to sell his interest, he does not have an absolute, uncontrolled right to sell the property as he sees fit, and thus the provision constitutes an unreasonable restraint on alienation. Either analysis, Gore contends, shows that the preemptive right provision violates the rule against perpetuities. Gore relies on four Kansas cases dating back to 1918 to show that the preemptive right provision here is not personal to the original parties but rather inures to the benefit of their successors; hence, the provision must fail. Those cases will be discussed later in this decision.

Beren, on the other hand, relies on the recent trend tempering the rule and limiting its application. He notes that a contract should be interpreted to avoid violating the rule against perpetuities if feasible, and he contends that it is indeed feasible to so construe the Agreement here. Beren relies on a 1969 California case which construed language identical to the language in the Agreement here and held that the contract there was binding upon the original parties and their successors but was only enforceable by the original parties and so did not violate the rule. Beren discusses the same Kansas cases as Gore but reaches a different conclusion, asserting that the preemptive right provision here is personal to the original parties and therefore expires at their deaths. Beren also relies on cases from other jurisdictions to suggest that the rule against perpetuities should not even apply to preemptive right provisions. In any event, Beren argues, there is little restraint on alienation and the provision does not violate the rule against perpetuities.

Kansas appellate courts have decided four cases which are similar to the case at bar.

In *Henderson v. Bell*, 103 Kan. 422, which Gore argues is controlling, this court construed what was referred to by the court as an "option" but was actually a "preemptive right."

"A right of pre-emption differs from an option in that a pre-emption does not give the pre-emptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell to offer the property first to the person entitled to the pre-emption at the stipulated price, and upon receiving such an offer, the pre-emptioner may elect whether he will buy, and if he elects not to buy, then the owner of the property may sell to a third party." *Anderson v. Armour & Company*, 205 Kan. 801, Syl. ¶ 1, 473 P.2d 84 (1970).

See *Miller v. Alexander*, 13 Kan. App. 2d 543, Syl. ¶ 8, 775 P.2d 198, *rev. denied* 245 Kan. 785 (1989).

In *Henderson*, a contract provided:

" '[S]hould first parties elect to sell the following 40 acres now occupied by them . . . the second parties shall have the right to purchase said last mentioned 40 at the agreed price of $65 an acre. It is further agreed that if said parties elect to sell . . . at any time in the future, the first parties shall have the right to purchase same at the agreed price of $65 an acre, provided first parties will also buy the balance of the above described land at the agreed price of $40 an acre.' " 103 Kan. at 423-24.

This court stated that, under the contract, the first parties were precluded from selling their property to any person unless they first offered it to the second parties or "to those holding under the contract." 103 Kan. at 424. This court further stated, "When sold under the contract, the property must be sold at $65 an acre, although at that time it may be worth $1,000 an acre. [The first party] does not have an absolute, uncontrolled right to sell the property at any time that he may see fit." 103 Kan. at 424. This court held that the second parties "and those holding under them, either as assignees or heirs, would hold a right to obtain an interest in the property running for an indefinite period of time. That right would be held in violation of the rule against perpetuities." 103 Kan. at 424-25.

The Henderson case follows the majority rule concerning restraints on alienation which violate the rule against perpetuities where the right of preemption involves the right to purchase at a fixed price. When the price is fixed, the alienability of the land is affected. A price reflecting fair market value, such as a bona fide offer from a third party as is required by the agreement here, does not affect alienability. As a result, *Henderson* is of little use in deciding this case.

Our Court of Appeals construed an option and a first right of refusal in *Smerchek v. Hamilton*, 4 Kan. App. 2d 346, 606 P.2d 491 (1980). The contract provided for a right of first refusal during the plaintiff's life and for an option at plaintiff's death, but neither was exercisable after defendants received notice of plaintiff's death and failed to exercise their option within 30 days, the time set by the contract. The court held that notice of plaintiff's death must be given within a "reasonable time," which would be "well

within twenty-one years of plaintiff's death." 4 Kan. App. 2d at 353. Thus, there was no violation of the rule against perpetuities.

In *Crawn v. French*, 7 Kan. App. 2d 672, 646 P.2d 1158 (1982), the Kansas Court of Appeals again addressed a right of preemption. There, "plaintiffs, for themselves, their heirs, executors and assigns, granted to 'Mary Ann French, a single woman,' defendant, the exclusive right to purchase their residence property" on certain terms and conditions. 7 Kan. App. 2d at 673. The trial court had held that the contract "is binding on plaintiffs and their heirs but is not binding on defendant's heirs. In other words, the defendant has an option to purchase during her lifetime only," and the Court of Appeals affirmed this holding because "clearly the grant to defendant was an 'exclusive' grant to her alone." 7 Kan. App. 2d at 673. Thus, the preemptive right was personal to Mary Ann French and expired on her death, so there was no violation of the rule against perpetuities. The rule of law was aptly stated:

"The validity of a preemptive right under the rule against perpetuities depends upon whether the right is found to be personal to either or both of the parties involved so that the right must necessarily expire during the lifetime of one of the parties. Where a preemptive right is personal to the prospective buyer and does not extend to his or her heirs or assigns, the equitable interest would necessarily vest during his or her lifetime." 7 Kan. App. 2d 672, Syl. ¶ 2.

Finally, this court addressed whether a right of preemption violated the rule against perpetuities in *Barnhart*, 235 Kan. 511, which Beren argues is controlling. There, this court considered application of the rule against perpetuities in a contract which conveyed property to Purchasers (McGrew) and which included a provision that "5 acres are to be retained by Sellers [the Barnharts] as a site for a house trailer with the understanding that when Sellers decide to sell or vacate said 5 acres they will first offer it to Purchasers at a price not to exceed $200.00 per acre plus the cost of any permanent improvements." A further provision stated, "It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties." 235 Kan. at 512-13. After disposing of a portion of the property, the purchasers later sold the remaining property

to the McKinneys subject to the contract between McGrew and the Barnharts. Over 10 years later, Mrs. Barnhart decided to sell the five acres she retained, and she directed a McGrew agent to first offer the property to the McKinneys in accordance with the contract. The McKinneys declined due to a dispute about the cost of the improvements. The McKinneys made a counter-offer, which Mrs. Barnhart refused. Mrs. Barnhart filed an action to quiet title, and the McKinneys counterclaimed, seeking to enforce their contractual rights to purchase the five acres. Mrs. Barnhart argued that the provision in the contract between Barn-harts and McGrew violated the rule against perpetuities. This court noted that the Barnhart-McGrew contract created a pre-emptive right. Acknowledging the recent trend limiting appli-cation of the rule against perpetuities to commercial transactions, this court then posed the dispositive question: "Was the right to delay the sale of the property or the vacation of the property one which could be passed on to the heirs and assigns of the Barnharts or was it personal to them?" Holding that the right was personal to the Barnharts, this court determined that McGrew's preemptive right would be triggered upon the Barn-harts' sale or vacation of the property; hence, McGrew's (and therefore the McKinneys') preemptive right would arise within a period not violative of the rule against perpetuities. 235 Kan. at 519. We stated that "the intent of the parties appears clear and in accordance with our prior decisions that whenever possible a document should be construed to uphold its validity rather than defeat it, we hold the . . . contract under the specific facts of this case does not violate the rule against perpetuities." 235 Kan. at 522.

We are persuaded to follow *Harrison v. Domergue*, 274 Cal. App. 2d 19, 78 Cal. Rptr. 797 (1969), where the California Court of Appeals evaluated a preemptive right agreement which was " 'binding upon all of the parties hereto, their heirs, executors, administrators and assigns, and shall be considered as a covenant running with the land.' " 274 Cal. App. 2d at 21. There, a suc-cessor to an original party to the agreement sought to assert waiver as a defense against another successor's partition action. No original party was remaining. The successor seeking partition asserted that the preemptive right agreement violated the rule

against perpetuities. The court there distinguished the benefit of a covenant from the burden of a covenant and noted that "[a] restrictive covenant is to be construed strictly; where it is subject to more than one interpretation, that consistent with unencumbered use and alienation of property is to be preferred." 274 Cal. App. 2d at 23. The court stated:

"This agreement refers only to the binding effect on successors; there is no express provision that the benefit runs to successor owners. . . . [T]he property could . . . be fragmented among many persons not party to the original agreement; something of this sort has already occurred. If none of the fractional interests of present or future owners could be sold without making to all of the successor owners the option offer required by the agreement, the resulting burden on any one party would be greater than that accepted by the original parties. . . . The apparent purpose of the original parties—to retain for themselves control of the admission of new co-owners—would not be served by extending the operation of the agreement far into the future. That purpose would continue to have validity only as long as the original parties, or one of them, lived and continued in ownership. So long as the covenant was binding upon successors at the instance of any of the still-living original parties, its purpose would be fulfilled." 274 Cal. App. 2d at 22-23.

Thus, the court held that the agreement was enforceable only by the original parties but binding upon the original parties and their successors. Because the agreement could not be enforced after the death of all original parties, it did not violate the rule against perpetuities.

The holding and reasoning of *Harrison* was recently adopted in *HSL Linda Gardens Properties, Ltd. v. Seymour,* 163 Ariz. 396, 788 P.2d 129 (Ct. App. 1990). There, the Arizona Court of Appeals held that a right of first refusal agreement was a covenant running with the property and therefore binding on a successor to the agreement. The covenant was enforceable by any of the original parties against successors. Therefore, the court held that "the rule against perpetuities and the policy favoring unencumbered use and alienation of property is satisfied." 163 Ariz. at 397.

*Harrison* was also discussed in *American Medical International, Inc. v. Feller,* 59 Cal. App. 3d 1008, 131 Cal. Rptr. 270 (1976). There, the California Court of Appeals considered an implied waiver of the right to partition. The court noted the *Harrison*

rule that the waiver of the right to partition was binding upon successors but only enforceable by original parties.

We hold that the benefit, *i.e.*, the right of first refusal, in the agreement at issue here is personal to the signatories to the agreement and does not run to successor owners; it ends when the last signatory dies or divests himself of his interest or otherwise waives the right. Thus, the right of preemption in this agreement does not violate the rule against perpetuities.

Judgment of the Court of Appeals affirming the district court is affirmed.