Verna **BERRY, et al., Plaintiffs,**

v.

**FARMLAND INDUSTRIES, INC., Defendant.**

No. 99–2337–JWL.

United States District Court, D. Kansas.

Sept. 8, 2000.

---

Randall K. Rathburn, Charles C. Steincamp, Depew and Gillen, L.L.C., Wichita, KS, for plaintiffs.

Terry W. Schackmann, Michael F. Saunders, Barry L. Pickens, Clayton L. Barker, Spencer, Fane, Britt & Browne, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is the second of four environmental lawsuits recently filed by individuals residing near a refinery in Coffeyville, Kansas, which is owned and operated by defendant Farmland Industries, Inc. (Farmland).[1] In this case, plaintiffs filed suit on August 3, 1999, alleging that Farmland violated emissions and reporting requirements of the Clean Air Act (CAA) with respect to the Coffeyville refinery.[2] Pursuant to the citizen-suit provision of the CAA, 42 U.S.C. § 7604, plaintiffs seek the imposition of civil monetary penalties, injunctive relief,

1. The three additional lawsuits pending before this court involve nearly identical claims. They are: *Anderson v. Farmland Indus., Inc.,* No. 98–2499; *Green v. Farmland Indus., Inc.,* No. 99–2546; and *King v. Farmland Indus., Inc.,* No. 00–2198.

2. Plaintiffs have also asserted several common law claims arising out of Farmland's alleged conduct. These claims are not relevant to the motion presently before the court.

and attorneys' fees and costs. This matter is presently before the court on the issues that remain in Farmland's Motion for Summary Judgment for Lack of Standing on Counts V–VIII (Doc. 11). As discussed in detail below, the court grants Farmland's motion with respect to the claim alleged in paragraph 45, Count V, of plaintiffs' complaint, and the court denies Farmland's motion with respect to the claim alleged in paragraph 49, Count V, of plaintiffs' complaint.

## I. General Background

Farmland currently owns and operates a petroleum refinery in Coffeyville, Kansas. At the refinery, Farmland operates certain equipment, including a coal-fired boiler, a Clause Sulfur Recovery Unit (CSRU), a Fluid Catalytic Cracking Unit catalyst regenerator (FCCU), a Radco heater, and sixteen fuel gas combustion devices. The CAA limits the amount of gases that these devices may legally emit into the air. Farmland must monitor emissions from these devices and report emissions that exceed levels set forth in the CAA to the Kansas Department of Health and the Environment (KDHE) on a quarterly basis. *See* 40 C.F.R. §§ 60.7(c) & 60.13(h).

On August 3, 1999, plaintiffs, residents of Coffeyville who live near the Farmland refinery, filed a complaint alleging that emissions from the refinery exceeded the limits prescribed by the CAA, thereby impairing their property value, quality of life, health, and welfare. Plaintiffs also claimed that Farmland failed to report these excess emissions to the KDHE as required by federal and state regulations. On November 15, 1999, Farmland filed the present motion for summary judgment on Counts V–VIII of plaintiffs' complaint.

## II. Legal Standards

■ Farmland's motion for summary judgment alleges that plaintiffs lack standing to bring Counts V–VIII of their complaint. Standing to sue is an essential component of "what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) and U.S. Const. Art. III, § 2). Absent standing, a federal court has no authority to act. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). To satisfy Article III's standing requirements, a plaintiff must show (1) that the plaintiff has suffered an actual or threatened injury in fact; (2) that the injury is causally connected to the challenged conduct of the defendant; and (3) that the injury will be redressed by the relief sought. *See id.* at 704.

■ This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *Steel Co.*, 118 S.Ct. at 1017 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). Here, then, plaintiffs have the burden of establishing that they have standing to bring this action. As the Supreme Court explained in *Lujan v. Defenders of Wildlife*:

Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts" which for purposes of the summary judgment motion will be taken to be true. And at the final stage,

those facts (if controverted) must be "supported adequately by the evidence adduced at trial."

504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

### III. Procedural Posture

Since the filing of Farmland's motion for summary judgement, the parties and the court have taken steps which have substantially decreased the number of issues that the court must here decide. First, in accordance with an agreement reached by the parties, the court issued an order on December 20, 1999 (Doc. 85) setting forth "which issues in this motion remain pending and which are resolved pursuant to the Court's ruling on summary judgment in *Anderson v. Farmland Industries, Inc.,* 70 F.Supp.2d 1218 (D.Kan.1999)."[3] The court found that, pursuant to its holding in *Anderson,* plaintiffs lacked standing to pursue the claims alleged in Count VI and the claims related to K.A.R. 28–19–202 alleged in Count VII. The court accordingly dismissed those claims. The court also concluded that plaintiffs did not need to respond to three of the arguments asserted in Farmland's summary judgment motion because the resolution of the arguments was "controlled" by the court's *Anderson* opinion. Essentially, if plaintiffs "demonstrate the first two prongs of the standing inquiry—injury in fact and causation thereof by defendant's alleged Clean Air Act violations"—then, *Anderson* dictates the following results: (1) plaintiffs have standing to pursue the claims related to K.A.R. 28–19–210(c)(3)(D) alleged in Count VII; (2) plaintiff's have standing to pursue the claims alleged in paragraphs 37, 40, 43, 44, and 48 of Count V; and (3) plaintiffs have standing to pursue the

claims alleged in Count VIII. Because the issue of whether or not plaintiffs could demonstrate the first two prongs of standing was unresolved in December, 1999, however, the court could not definitively rule on Farmland's summary judgment motion as it related to these claims at the time.

Then, by letter dated June 28, 2000,[4] Farmland withdrew from its summary judgment motion its argument "that each individual plaintiff has the burden to demonstrate the first two prongs of the standing inquiry."[5] As recognized by the parties, (Docs. 18 & 19), the combination of Farmland's withdrawal of this argument and the court's December 20, 1999 order leaves only two related issues for the court to resolve on summary judgment. The first issue is whether plaintiffs have standing to pursue their claim, asserted in paragraph 45 of Count V, that Farmland has violated 40 C.F.R. § 60.7(c)(1) by failing to report the magnitude of the excess emissions from the FCCU. The second issue is whether plaintiffs have standing to pursue their claim, asserted in paragraph 49 of Count V, that Farmland has violated 40 C.F.R. § 60.7(c)(1) by failing to report the magnitude of excess emissions from the CSRU. The court addresses these two issues below.

### IV. Discussion

■ As Farmland no longer asserts that plaintiffs cannot meet the injury and causation prongs of the standing inquiry, the resolution of the two remaining issues hinges on whether plaintiffs have met the redressability prong of the standing inquiry. The Supreme Court recently set forth the standard for redressability in *Steel*

---

3. *Anderson v. Farmland Indus., Inc.* was the first of the recent environmental cases filed by Coffeyville residents against Farmland. On September 21, 1999, the court granted in part and denied in part each of the parties' motions for summary judgment.

4. Farmland's letter was mailed directly to the court's chambers, and has not been filed with the Clerk of Court's office. To ensure that the

letter becomes part of the record in this case, a copy is attached hereto.

5. Farmland stated that its withdrawal was based on a "Supreme Court decision" that made the argument "no longer viable." Presumably, Farmland is referencing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

*Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Focusing only on the redressability prong, the Court ruled that to survive a motion for summary judgment a plaintiff must come forward with specific facts from which a reasonable fact finder could conclude either that defendant was in fact violating the Act at the time plaintiffs filed their complaint or that future violations of the Act were imminent. *See id.* at 1019; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Applying this standard to the two remaining issues, the court finds below that plaintiffs lack standing to bring the FCCU reporting requirement claim alleged in paragraph 45 of plaintiffs' complaint, but that plaintiffs have standing to bring the CSRU reporting requirement claim alleged in paragraph 49 of plaintiffs' complaint.

### A. Alleged Reporting Violations Related to the FCCU

In paragraph 45 of their complaint, plaintiffs allege that "Farmland has violated 40 C.F.R. § 60.7(c)(1).[6] On certain occasions, including the Fourth Quarter of 1998 and the First Quarter of 1999, Farmland failed to report the magnitude of its excess opacity emissions [from the FCCU], and/or Farmland failed to report each period during which excess opacity emissions occurred." Farmland argues that summary judgment against plaintiffs must be granted with regard to this claim because Farmland corrected its past excess emissions reports before plaintiffs filed suit. Thus, according to Farmland, plaintiffs cannot succeed on the redressability prong

because they have not come forward with facts that Farmland was violating the CAA at the time plaintiffs filed suit or that future violations of the Act were imminent at the time plaintiffs filed suit. (Doc. 11 at 20–21).

Plaintiffs concede that, after Farmland received notice from plaintiffs of its reporting violations, Farmland filed corrected reports with the KDHE before plaintiffs filed suit. (Doc. 18 at 3). In *Steel,* the Supreme Court held that when a defendant abates past violations by filing corrected reports before suit is filed, a plaintiff fails to meet the redressability prong of standing *unless* the plaintiff can show that a violation was ongoing or imminent when suit was filed. 118 S.Ct. at 1019.[7] See also *Laidlaw,* 120 S.Ct. at 707 (discussing the *Steel* holding). Here, plaintiffs contend that, despite Farmland's correction of the reports, the "risk" of continued reporting violations by Farmland "had not been completely eradicated" when plaintiffs filed their complaint. (Doc. 18 at 3). By arguing that the "risk" of reporting violations by Farmland remained, plaintiffs are essentially arguing that future violations were imminent at the time that they filed their complaint. In support of their argument, plaintiffs cite Exhibits 3, 4, 5, and 7 of the Affidavit of Peter Hanley (Doc. 13), which are copies of administrative orders and consent decrees entered against Farmland prior to the filing of this suit. It is plaintiffs' contention that these documents demonstrate that Farmland has a "history of curing its self-monitoring and reporting *only* when faced with a citizen-enforcement suit or adminis-

---

**6.** 40 C.F.R. § 60.7(c) states:

Each owner or operator required to install a continuous monitoring devise shall submit excess emissions … reports. Written reports of excess emissions shall include the following information:
(1) The magnitude of excess emissions … and the date and time of commencement and completion of each time period of excess emissions.

**7.** Farmland reads *Steel* to require dismissal of all suits in which a defendant corrects report-

ing violations prior to the filing of suit against it. This reading is too narrow. The *Steel* Court deemed dismissal for lack of standing appropriate where the defendant corrected past reporting violations by the time suit was filed *and* the plaintiff did not allege a continuing violation or the imminence of a future violation. Here, *Steel* is not controlling because plaintiffs allege that a future violation by Farmland was imminent when suit was filed.

trative enforcement of the EPA or KDHE," and that if the court does not enter a consent decree "Farmland will continue its pattern" of reporting violations. (Doc. 18 at 5) (emphasis added).

■ Farmland takes issue with the contention that Exhibits 3, 4, 5, and 7 "demonstrate a history of violating Clean Air Act reporting requirements." (Doc. 19 at 4). The court need not decide this issue, however, because even if the exhibits demonstrate a past pattern of intermittent violations and subsequent corrections by Farmland, such a pattern would not allow a reasonable fact finder to find that *future* violations were imminent when the complaint was filed. In *Steel,* the Supreme Court rejected the argument that when a defendant's reason for ceasing its illegal activity is the filing of litigation against it then a presumption is raised that future injury will occur. 118 S.Ct. at 1019. Rather, the Court held that "allegations of future injury [must] be particular and concrete." *Id.* at 1020. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (citing *O'Shea v. Littleton,* 414 U.S. 488, 496–97, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

Plaintiffs simply need a more concrete reason than Farmland's checkered reporting history to support their allegations that there was a risk that a future reporting violation was imminent when this suit was filed. While this reason may have supported an argument that the reporting violation claim was not moot, the Supreme Court has recently confirmed that separate standards apply to mootness and standing determinations. In *Laidlaw,* the Court stated that, in contrast to the standard for mootness, "the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." 120 S.Ct. at 709. "[T]here are circumstances in which the prospect that a defendant will engage in

(or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* The court finds such circumstances to exist here.

The court must therefore address plaintiffs' request that, "if this Court is not persuaded that Farmland's past history is a sufficient basis for standing," it delay ruling on this issue until after discovery has been completed. Plaintiffs premise this request on the theory that, although they "do not have evidence that additional FCCU reporting violations occurred after the date the *Berry* complaint was filed," future discovery could reveal such violations. The court declines to postpone its ruling. The Supreme Court has directed that "standing is to be determined as of the commencement of suit." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571 n. 5, 112 S.Ct. 2130 (1992). *See also, Laidlaw,* 120 S.Ct. at 709 (holding that federal courts have no jurisdiction "if a plaintiff lacks standing at the time the action commences"). As this suit commenced over one year ago, there is simply no reason for the court to delay its ruling. Thus, the court now dismisses, for lack of standing, plaintiffs' claim that Farmland violated 40 C.F.R. § 60.7(c)(1) with respect to the reporting requirements applicable to the FCCU.

**B. Alleged Reporting Violations Related to the CSRU**

The second issue that remains pending in Farmland's motion for summary judgment also involves the reporting requirements delineated in 40 C.F.R. § 60.7(c)(1), this time as the regulation applies to Farmland's Third Quarter, 1994 report of the CSRU emissions. Farmland asserts that plaintiffs lack standing to bring the claim set out in paragraph 49 of their complaint, which states that "Farmland has violated 40 C.F.R. § 60.7(c)(1)[by failing] on numerous occasions[8] to report the

---

8. The parties have agreed that the applicable statute of limitations precludes claims accruing more than five years before the filing of plaintiffs' complaint. (Docs. 18 & 19) (citing

28 U.S.C. § 2462). Plaintiffs accordingly concede that "the statute of limitations limits the *Berry* plaintiffs' claims in … paragraph

magnitude of excess emissions from the Clause Sulfur Recovery Unit in accordance with 40 C.F.R. § 60.13(h)."[9] Here, however, Farmland does not ground its standing argument on the fact that it corrected past reports before suit was brought. Rather, Farmland asserts that a consent decree, which it entered into with the Environmental Protection Agency (EPA), comprehensively settled all potential claims of CAA violations by Farmland prior to April 30, 1996.

On October 9, 1996, Judge Vratil approved a consent decree entered into between Farmland and the EPA. *See United States v. Farmland Indus., Inc.,* No. 96–2360 (D.Kan. Oct. 10, 1996), (Doc. 13, Exh. 3). Prior to setting forth specific provisions of the agreement, the consent decree states:

> Whereas, the United States and Farmland have negotiated a comprehensive settlement of all potential claims of violations of EPRC, RCRA, and the Clean Air Act by Farmland at the Coffeyville facility *known to EPA on or before April 30, 1996, including, but not limited to, the Clean Air Act claims alleged by the United States in the Complaint* filed in this action. . . .

*Id.* at 8 (emphasis added). Then, in the substantive portion of the agreement, in a section entitled "IX. Effect of Settlement," the consent decree states:

> Defendant Farmland's performance of its obligations under this Decree shall resolve . . . (a) the claims alleged in the Complaint filed in this action, and (b) claims for violations of 40 C.F.R. Subpart QQQ based on Farmland's startup and operation of the hydrodesulfurization (HDS) unit at the Coffeyville facility. . . . *The claims set forth in (a) and (b)* in the foregoing sentence *comprise all of the potential claims* for violations of the Clean Air Act and regulations promulgated thereunder by Farmland at

the Coffeyville facility that are *known to EPA as of April 30, 1996.*

*Id.* at 19 (emphasis added).

■ Farmland argues that claims arising from the Third Quarter, 1994 reports of CSRU emissions, while not addressed in the 1996 complaint, were nonetheless "known to EPA on or before April 30, 1996" because Farmland filed the report with the EPA prior to 1996. Farmland points out that the introductory language of the consent decree explains that the agreement settled all potential claims for CAA violations known to the EPA as of April 30, 1996, "including, but not limited to" claims asserted in the 1996 complaint. Plaintiffs, on the other hand, maintain that "known to EPA as of April 30, 1996" is specifically defined by the consent decree as only "(a) the claims alleged in the [1996] Complaint filed in this action, and (b) claims for violations of 40 C.F.R. Subpart QQQ." As the CSRU reporting violations alleged in paragraph 49 of the current complaint do not fall under either of these two categories, plaintiffs allege that the current claims were not "known to EPA as of April 30, 1996," as that term is defined in the consent decree, and therefore were not resolved by the consent decree. The court agrees with plaintiffs and concludes that the consent decree does not bar plaintiffs from bringing their current CSRU reporting claim.

■ In *Sinclair Oil Corp. v. Scherer,* the Tenth Circuit discussed the principles that a court should apply when determining whether pending claims are barred by a previous consent decree. 7 F.3d 191 (10th Cir.1993). The Circuit stated that the court should construe a consent decree as it would a contract, such that "the terms of the decree and the respective obligations of the parties must be found within the four corners of the consent decree."

9. 40 C.F.R. § 60.13(h) sets forth what data is to be reported and in what units of measurement.

49 of their complaint to Farmland's failure to report the magnitude of sulfur dioxide emissions from the Sulfur Recovery Unit in the *third quarter, 1994.*" (Doc. 18 at 7) (emphasis added).

*Id.* at 194 (*citing United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). In this case, principles of Kansas contract law are applicable. *See id.* (*citing Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines Inc.,* 713 F.2d 319, 321 (7th Cir. 1983)). Kansas, like most states, adheres to "the cardinal rule of contract construction" which "requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision." *In re Cherokee County, Kansas Health Care Facility Revenue Bonds,* 262 Kan. 941, 953, 946 P.2d 83, 91 (1997). "As a general rule, if the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction." *Id.* (*quoting Gore v. Beren,* 254 Kan. 418, 427, 867 P.2d 330 (1994)).

Applying these rules, the court finds the language of the 1996 consent decree clear and unambiguous. Because the provisions of the decree can be read in harmony and are not contradictory, the court will not resort to examining extrinsic evidence[10] nor applying rules of contract construction to determine the parties' intent. Although Farmland correctly notes that the language of the decree does not limit settlement to only those CAA claims alleged in the 1996 complaint, Farmland seems to set aside the fact that the language of the decree does limit settlement to only those potential claims "known to EPA on or before April 30, 1996." While the clause "known to EPA on or before April 30, 1996" would normally raise issues about what potential claims the EPA actually "knew" about on that date (for example, the issue raised by Farmland about whether the EPA "knew" about the Third Quarter, 1994 CSRU reporting violation claim

because Farmland filed the report prior to April 30, 1996), the clause is specifically defined in the decree, allowing the court to determine what claims the parties intended the clause to cover. *See, e.g., Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 595, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (Thomas, J., dissenting) ("[W]hen one interprets a contract provision, one usually begins by reading the provision, and then ascertaining the meaning of any important or ambiguous phrases by consulting any definitional clauses in the contract.").

In the section of the consent decree delineating the "Effect of Settlement," the decree states, "The claims set forth in (a) and (b) of the foregoing sentence comprise *all* of the potential claims for violations of the Clean Air Act and regulations promulgated thereunder by Farmland at the Coffeyville facility that are *known to EPA as of April 30, 1996.*" (Doc. 13, Exh. 3) (emphasis added). Subsection (a) discusses claims alleged in the 1996 complaint. Subsection (b) discusses claims for violations of Subpart QQQ of 40 C.F.R. (setting forth Clean Air Act regulations for emissions from petroleum refinery wastewater systems), which were not alleged in the 1996 complaint. Reading the provisions of the decree in harmony, the court finds that the claims in subsection (b) are the claims which the introductory language of the decree referred to as claims known to the EPA but "not limited to" claims in the complaint. Because the CSRU reporting violation claim alleged in the case at bar is not a claim alleged in the 1996 complaint, nor a claim arising under 40 C.F.R. subpart QQQ,[11] it does not fall under the consent decree's definition of "known to EPA as of April 30, 1996." The present claim was not mentioned within the four corners of the 1996 consent decree and, therefore, was not resolved by the entry of

10. In reaching its decision, the court did not consider the letter of Thomas Swegle, attorney of record for the United States on the consent decree, opining that the consent decree was only intended to cover certain violations.

11. The claim in paragraph 49 of plaintiff's complaint alleges a violation of 40 C.F.R. subpart A, not subpart QQQ.

the consent decree. *See, e.g., Scherer,* 7 F.3d at 194 (holding that claims not mentioned in the consent decree were not resolved by the entry of the consent decree). Farmland fails to convince the court that plaintiffs' claim in paragraph 49 of their complaint should be barred on this ground.[12] Farmland's motion for summary judgment on the reporting violation claim alleged in paragraph 49 of Count V is denied.

**IT IS ACCORDINGLY ORDERED** that Farmland's motion for summary judgment (Doc. 11) is **granted in part and denied in part**. Specifically, Farmland's motion is **granted** with respect to the claim alleged in paragraph 45, Count V, of plaintiffs' complaint, and this claim is dismissed. Farmland's motion is **denied** with respect to the claim alleged in paragraph 49, Count V, of plaintiffs' complaint.

**IT IS SO ORDERED.**

---

12. In its original motion for summary judgment, Farmland stated that it could not correct the CSRU records "from five years ago" because the "raw data necessary to provide the conversion factor, which Farmland must maintain only for two years, 40 C.F.R. § 60.8(f), is no longer available." (Doc. 11 at 22–23). Thus, according to Farmland, an injunction or fine could not "redress the lack of data." (Doc. 11 at 23). In their jointly proposed Order on Issues Remaining for Summary Judgment, the parties did not identify this issue as one remaining for the court's determination. (Docs. 82 & 83). Moreover, the parties have not addressed this issue in their subsequently filed papers. Therefore, the court does not consider it here.